**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NATALIE M. GRIDER and** | : | |
| **KUTZTOWN FAMILY MEDICINE,** | : | **Civil Action No. 05-MC-40** |
| **P.C.,** | : | |
| | : | |
| **Plaintiffs** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | |
| **KEYSTONE HEALTH PLAN** | : | |
| **CENTRAL, INC., et al.,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM AND ORDER**

On August 15, 2005, Plaintiffs filed a "Combined Notice of Filing for Protective Order

with the United States District Court for the Eastern District of Pennsylvania, Docket No. 01-

56[41] and Request for Stay of Enforcement of the Order Issued Herein on July 28, 2005."

(Doc. No. 8.)  By the motion, Plaintiffs asked that this Court stay its prior Order granting

Defendant Highmark's motion to enforce a subpoena served on Dennis Olmstead, the Vice

President and Chief Economist of the Pennsylvania Medical Society ("PMS").  Subsequently,

Plaintiffs purported to withdraw their motion to stay, while at the same time requesting (without

a proper motion) that this Court conduct an in camera review of certain documents they claimed

were work-product.  Highmark opposed such review, and further urged this Court to impose

sanctions on Plaintiff for tampering with this Court's July 28, 2005 Order directing that third-

party Dennis Olmstead produce certain documents and submit for a deposition.  On November

16, 2005, Plaintiffs submitted another pleading, arguing that sanctions are unwarranted, and

continuing their substantially untimely request that this Court conduct an in camera review of a

number of documents that have never been provided to the Court, and which were the subject of

a fiercely-contested discovery dispute in which Plaintiffs elected not to participate until after the dispute had been fully resolved.  Even had Plaintiffs not purported to withdraw their motion, the Court would find no legitimate basis upon which to stay enforcement of the July 28, 2005 Order. Similarly, the Court does not find it now appropriate to conduct an entirely new discovery dispute by way of an in camera review of documents that were already the subject of substantial litigation between Defendants and Dennis Olmstead – a dispute of which Plaintiffs were at all times aware but in which they never attempted to participate.

Despite professing keen interest, and disappointment, in this Court's Order, and demonstrating obvious concern over Defendant Highmark's impending deposition of Mr. Olmstead, Plaintiffs never filed an objection with this Court to Highmark's discovery efforts in this Court.  Indeed, despite having notice of the discovery dispute between Defendant Highmark and Olmstead, Plaintiffs never once appeared before this Court to voice an interest in the matter, nor to raise any opposition to Highmark's request that the subpoena be enforced.  It was only after this Court issued an Order granting, in part, Highmark's motion to enforce the subpoena issued to Mr. Olmstead that Plaintiff raised any objection whatsoever.  In belatedly attempting to stay this Court's Order, Plaintiffs took the circuitous approach of moving the United States District Court for the Eastern District of Pennsylvania ("Eastern District") to extend an unrelated Order issued in the underlying litigation in an effort to obtain relief from this Court's July 28, 2005 Order.  It appears Plaintiffs were unsuccessful in this effort, but continue their efforts to frustrate Highmark's discovery by suggesting that this Court essentially re-open the settled discovery dispute to conduct an in camera review of certain documents.  The Court finds no legitimate basis upon which to conduct such a review.  To provide context, a discussion of the

2

means by which Plaintiffs went about challenging the enforcement of this Court's July 28, 2005 Order is explained below.

## I.      Background

In the Plaintiffs' initial Rule 26 disclosures setting forth the names and addresses of those persons likely to have information relevant to Plaintiffs' claims, they listed Dennis Olmstead, the Vice President and Chief Economist of the PMS.  The PMS is a not-for-profit professional association chartered under Pennsylvania law with a principal place of business located in Harrisburg, Pennsylvania.  The PMS represents approximately 20,000 physicians, and is the largest professional physician association in the Commonwealth with a mission aimed at promoting the interests of physicians and their patients in Pennsylvania through information, education, public relations, and advocacy initiatives.  (Doc. No. 5, at 2.)

On November 24, 2004, Highmark served Olmstead with a notice of deposition and subpoena duces tecum, commanding him to produce certain documents by December 6, 2004 and to appear at a deposition scheduled to commence December 7, 2004 at 9:00 a.m.  The subpoena served upon Mr. Olmstead requested production of the following documents:

1.      All documents that relate or refer to communications with Plaintiffs; Plaintiff's counsel, Kenneth Jacobsen, Francis Farina and Joseph O'Keefe; and Plaintiff's experts, Pamela Waymack, Mary Ratelle, and Kimberly J. Pollack, including, but not limited to, communications concerning the allegations set forth in the Amended Complaint, any of the Defendants identified in the Amended Complaint, and/or coding, bundling, downcoding, capitation, and class certification.

2.      All documents that refer or relate to communications with third parties concerning Plaintiffs, Plaintiff's counsel, Kenneth Jacobsen, Francis Farina and Joseph O'Keefe; and Plaintiff's experts, Pamela Waymack, Mary Ratelle, and Kimberly J. Pollack, the allegations set forth in the Amended Complaint, any of the Defendants identified in the Amended Complaint, and/or coding, bundling, downcoding, capitation, and class certification.

3.      All documents that relate or refer to communications with members of the
Pennsylvania Medical Society concerning Plaintiff's counsel, Kenneth Jacobsen,
Francis Farina and Joseph O'Keefe, Plaintiff's experts, Pamela Waymack, Mary
Ratelle, and Kimberly J. Pollack, the allegations set forth in the Amended
Complaint, any of the Defendants identified in the Amended Complaint, and/or
coding, bundling, downcoding, capitation, and class certification.

4.      All documents that relate or refer in any way to the subject matter of this action,
including, but not limited to, the allegations set forth in the Amended Complaint,
the allegations of the motion for class certification, documents addressing class
certification, and documents addressing coding, bundling, downcoding and
capitation.

5.      All documents that relate or refer to communications with Keystone Health Plan
Central, Capital Blue Cross and Highmark, Inc.

6.      All documents that relate or refer to communications with the Pennsylvania
Department of Insurance and/or the Pennsylvania Department of Health
concerning or referring in any way to Keystone Health Plan Central, Capital Blue
Cross and/or Highmark, Inc.

(Doc. No. 1, Ex. 2, Notice of Deposition and Subpoena Duces Tecum.)  Olmstead did not

comply with the terms of the subpoena and was not produced for the deposition.  Under cover of

a letter dated December 15, 2004, Olmstead's counsel provided certain documents in response to

the subpoena duces tecum, although the parties disputed whether the production was sufficiently

responsive.

        Together with its production of documents, Olmstead's counsel also produced a privilege

log and advised Highmark that it would move to quash the subpoena if Highmark sought to

compel Olmstead's deposition.[1]  (Doc. No. 5, Ex. B.)  Highmark subsequently moved to compel

production of documents and to enforce the subpoena, and Olmstead and the PMS filed a brief in

opposition, arguing that the subpoena should be quashed and a protective order entered because:

_____

        [1]      Despite this threat, neither the PMS nor Mr. Olmstead ever filed a motion to
quash the subpoena.

(1) the subpoena allegedly places an undue burden on non-parties to the underlying action; (2) the subpoena allegedly seeks information and documents protected by the attorney-client privilege and work-product doctrine; (3) the subpoena allegedly infringes upon the common-interest privilege between the PMS and the Plaintiffs in the underlying action; and (4) the subpoena seeks discovery of an unretained expert's opinion.  Despite having notice of this dispute, Plaintiffs elected not to intervene in any way.

By Order dated July 28, 2005 (the "July 28 Order"), this Court granted Defendant Highmark's motion in part, finding that the attorney-client privilege, work-product doctrine, and the common-interest exception did not operate to shield Olmstead from complying with the subpoena and submitting to a properly noticed deposition.  However, the Court also found that document requests 4, 5, and 6 listed above were overly broad and unduly burdensome, and excused Olmstead from responding to these document requests.  Pursuant to the terms of the July 28 Order, Olmstead was directed to respond fully to document requests 1, 2, and 3, and to cooperate with Defendant Highmark in scheduling Olmstead's deposition.

While the Court was considering Defendant Highmark's motion to enforce the subpoena, Highmark and the other defendants in the underlying action moved collectively to prevent Plaintiffs from taking any further depositions without obtaining leave of the Eastern District.  In so moving, the defendants relied upon the deposition limits set forth in Federal Rule of Civil Procedure 30(a)(2)(A).  By Order dated June 7, 2005 (the "June 7 Order"), the Eastern District granted Defendants' joint motion to enforce against Plaintiff the ten deposition limit set forth in

Rule 30(a)(2)(A). This Order, by its terms, applied only to Plaintiffs and their discovery efforts.[2]

Thereafter, on August 12, 2005 – two weeks after this Court's Order granting Defendants'

motion to enforce the subpoena issued to Mr. Olmstead – Plaintiffs filed a motion with the

Eastern District seeking to have the June 7 Order extended to cover all parties, such that no party

would be permitted to take more than ten depositions without first seeking leave of the Court.[3]

In addition, apparently construing certain language in the July 28 Order as an invitation

for Plaintiffs to object in the Eastern District to a subpoena issued from the Middle District on

the basis that the subpoena sought material protected by the work-product doctrine, Plaintiffs

sought a protective order from the Eastern District in an effort to frustrate Highmark's discovery

efforts. In conjunction with this motion for a protective order, Plaintiffs filed the instant motion

before this Court seeking to stay enforcement of the July 28 Order.

---

[2]     The parties have represented to the Court that at the time Defendants filed the motion in the Eastern District, Plaintiffs had taken 24 depositions. In contrast, Highmark and the other defendants had taken twelve depositions collectively. It is not clear how many depositions the defendants had taken at the time they moved in this Court to enforce the terms of the subpoena. Whatever the answer to this question, the Court finds it is not relevant to Plaintiffs' motion to stay.

[3]     Plaintiffs erroneously believed they had an agreement with Defendants that all parties would be subject to the ten deposition limit contained in Rule 30(a)(2)(A). This assertion is difficult to credit, given the terms of the motion that was actually filed in the underlying action, and the Order that was ultimately issued. The fact that Plaintiffs waited for approximately one and one-half months to seek a modification of the Order, and waited to do so until immediately after this Court issued the Order directing Olmstead to comply with the subpoena, casts further doubt on Plaintiffs' representation. It now appears that Plaintiffs were unsuccessful in their effort to obtain a modification of the Eastern District's Order and the ten deposition limit has been relaxed. Regardless, the Court cannot see that this subsequent Order bears on the enforceability of this Court's July 28 Order, which concerned a subpoena issued from this District.

**II.      Discussion**

For the reasons set forth below, even had Plaintiffs not withdrawn their motion, the Court

would find insufficient basis to stay enforcement of the July 28 Order.  As an initial matter, the

Court finds that Plaintiffs' failure to raise a work-product objection with this Court during the

pendency of Highmark's motion to enforce the subpoena to be without excuse, and Plaintiffs'

suggestion that this Court somehow invited them to lodge an untimely objection with the Eastern

District is, at best, a misreading of the July 28 Order.

It is true that this Court found that the PMS and Olmstead lacked standing to assert that

the work-product doctrine should apply to the extent the documents requested constitute material

Olmstead prepared at the behest of Plaintiffs' counsel in connection with the underlying action.[4]

It is also true that the Court found that, to the extent the subpoenaed documents constituted

work-product prepared by or at the request of Plaintiffs' counsel, it would be incumbent upon

Plaintiffs to object to the subpoena.  However, Plaintiffs' interpretation of this Court's Order as

inviting them to file an objection to the subpoena with the Eastern District after having failed to

voice any objections in this Court is simply incorrect.

Far from inviting the Plaintiffs to engage in further, and substantially belated, litigation

regarding Highmark's subpoena of the PMS and Olmstead, the Court finds that Plaintiffs'

conduct in waiting to move for a protective order until <u>after</u> this Court adjudicated the discovery

dispute, and in moving the Eastern District to issue a protective order relating to a subpoena

---

[4]      Additionally, the Court found that the PMS and Olmstead failed to demonstrate
that the work-product doctrine applied to materials prepared at the request of the PMS's own
counsel, because neither the PMS nor Olmstead established that the materials were prepared in
anticipation of litigation to which either the PMS or Olmstead were actually a party.

duces tecum and notice of deposition issued from <u>this</u> District to be legally unsound.

Plaintiffs have offered no legitimate justification or excuse for failing to raise their work-product objections with this Court while Defendant Highmark's motion to enforce was actually pending.  Inexplicably, Plaintiffs elected to wait on the sidelines for eight and one-half months between the time Highmark served the subpoena and noticed Olmstead's deposition, and this Court's July 28 Order enforcing the subpoena and directing Olmstead's compliance therewith.  In so doing, Plaintiffs apparently made the tactical decision to allow counsel for the PMS  to shoulder the burden of defending against the discovery requests in this Court.  Counsel for the PMS did so, and did so aggressively, and was largely unsuccessful despite its efforts.  The Court is simply nonplused as to why Plaintiffs would refrain from objecting to Highmark's discovery motion pending with this Court if Plaintiffs had a bona fide claim that the subpoena sought their work-product, or if there were some other legitimate basis to oppose Highmark's discovery request.[5]

The Court also finds unpersuasive Plaintiff's assertion that Highmark was required to inform this Court that all of the Defendants in the underlying action had conducted twelve depositions without having sought leave to exceed the ten deposition limit contained in Rule 30(a)(2)(A).  The Court is skeptical that the existence of Rule 30(a)(2)(A), on its own, somehow automatically operates to negate the enforceability of Highmark's subpoena duces tecum and

---

[5]        It bears mention that in a similar discovery dispute pending with the Western District of Pennsylvania, also involving the PMS and one of its former employees, the Plaintiffs asserted that the work-product doctrine should apply to prevent the discovery.  It is true that Defendant Highmark challenged Plaintiffs' standing to assert such an objection in that case, but that fact does not necessarily excuse Plaintiffs' failure to lodge a similar objection in the discovery dispute pending with this Court.

properly noticed deposition of Olmstead, and Plaintiffs have failed to support this assertion with binding authority. Moreover, even assuming that Highmark had an obligation to advise the Court as to how many depositions the defendants in the underlying action had taken collectively, the fact that neither Olmstead nor Plaintiffs ever raised this objection with this Court while the discovery motion was pending causes the Court to find that any such objection has been waived.[6]

The Court also rejects Plaintiffs' suggestion that the Eastern District's appointment of a special master to oversee discovery disputes in the underlying action had or has any relevance to the fully-adjudicated discovery dispute between Highmark and Olmstead. In the Order appointing the special master, the Eastern District declared that "in order to execute the duties of her office, the Special Discovery Master shall be vested with the power to: (1) address any outstanding and future discovery dispute that may arise including, but not limited to, disputes arising under Rules 26-37 and 45 of the Federal Rules of Civil Procedure[.]" (Doc. No. 10, Ex. A) (emphasis added). The Eastern District's Order was issued on August 25, 2005, approximately one month after this Court granted Highmark's motion to enforce the subpoena served upon Mr. Olmstead. Accordingly, the discovery dispute between Highmark and Olmstead was resolved and was neither "outstanding" nor "future" at the time the special master was appointed. Accordingly, the Court disagrees with Plaintiffs' suggestion that the

---

[6]     Given that Plaintiffs have been working closely with the PMS and its counsel in the underlying litigation, the Court finds it equally problematic that counsel for the PMS never argued that Highmark's discovery motion should be denied as being in violation of Rule 30(a)(2)(A). Had the PMS or Mr. Olmstead made this argument after the July 28 Order was issued, the Court would certainly have found such objection to have been waived. There is no legitimate basis upon which the Court could find that Plaintiffs' argument should be considered any differently, where Plaintiffs were at all times cognizant of the pending discovery dispute in this Court yet chose to remain silent until after the dispute was fully adjudicated.

appointment of a special master is or was somehow "pertinent" to this matter, or relevant in any

way to enforcement of this Court's July 28 Order.

Finally, Plaintiffs at one point claimed that the Eastern District of Pennsylvania is the

proper jurisdiction in which to contest the subpoena duces tecum issued from this District on the

basis that the subpoena sought documents that constituted work-product.  Subsequently,

Plaintiffs have alternatively suggested that this Court might conduct an in camera review of

certain documents Plaintiffs believe are work-product.  Plaintiffs request – which was never the

subject of a motion –  that this Court conduct an in camera review of the documents claimed to

constitute work-product is both procedurally confusing and substantially untimely, in that such

request was never raised while the discovery dispute was actually being litigated.  Nevertheless,

the Court finds it appropriate to comment on Plaintiffs' position that it was legally appropriate to

first seek this relief in the Eastern District, because the Court finds Plaintiffs' legal argument to

be incorrect on the facts of this case.

During oral argument held October 12, 2005, Plaintiffs suggested that Hay Group, Inc. v.

E.B.S. Acquisition Corp., 360 F.3d 404 (2004) provides support for the proposition that

jurisdiction to enforce or challenge a subpoena for documents lies in the district in which the

documents are to be produced.  In fact, Hay Group chiefly involved a challenge to the power of

an arbitration panel to issue subpoenas compelling non-parties to produce documents during pre-

hearing discovery pursuant to Section 7 of the Federal Arbitration Act, 9 U.S.C. § 7.  Hay

Group, 360 F.3d at 406.  The Third Circuit held that the plain language of the FAA did not give

arbitration panels the power to issue subpoenas to non-parties requiring that they produce

documents during pre-hearing discovery.  Id. at 411.  In addition to this primary holding, the

10

Third Circuit considered the argument of non-party Pricewaterhouse Coopers that Federal Rule

of Civil Procedure 45(a)(2) prohibits subpoenas duces tecum for documents located outside the

territory within which a subpoena may be served pursuant to Rule 45(b)(2).[7]  In rejecting this

argument, the Court specifically noted that nothing within Rule 45(a)(2) "suggests that a witness

who is subpoenaed to testify may not also be directed to bring documents that are not located

within the territorial limits set out in Rule 45(b)(2)."  Id. at 412.  In addition, the Third Circuit

noted that under Rule 45(a)(2), a court's jurisdiction to issue a subpoena is dependent upon the

location in which production of the documents is to be made.  Id.

    The Court does not find that Hay Group has any relevance to the facts of this case.

Pursuant to its plain language, Rule 45(a)(2) applies only to subpoenas duces tecum that are

issued independent of a subpoena commanding a person's attendance at a deposition.  See Fed.

R. Civ. P. 45(a)(2) ("If separate from a subpoena commanding the attendance of a person, a

subpoena for production or inspection shall issue from the court for the district in which the

---

[7]     Rule 45(a)(2) provides, in relevant part, as follows: "If separate from a subpoena commanding the attendance of a person, a subpoena for production or inspection shall issue from the court for the district in which the production or inspection is to be made."  Fed. R. Civ. P. 45(a)(2).

    Rule 45(b)(2) provides, in relevant part, as follows:

    > [A] subpoena may be served at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection specified in the subpoena or at any place without the state where a state statute or rule of court permits service of a subpoena issued by a state court of general jurisdiction sitting in the place of the deposition, hearing, trial, production, or inspection specified in the subpoena.

Fed. R. Civ. P. 45(b)(2).

production or inspection is to be made") (emphasis added).  In this case, the subpoena issued to Olmstead required that he produce documents <u>and</u> commanded his appearance at a deposition. Accordingly, the Court finds that Rule 45(a)(2) has no application to the subpoena issued to Olmstead, and therefore finds that the holding in <u>Hay Group</u> is irrelevant to the matter pending before the Court.

In closing, the Court notes its surprise and displeasure with Plaintiffs' counsel's apparent urging that Olmstead not comply with the July 28 Order.  Based upon representation of Maureen Fitzgerald, counsel to the PMS, it appears Plaintiffs' counsel advised her that activity in the underlying action in the Eastern District had cast doubt on whether Highmark was entitled to enforce the July 28 Order.  Attorney Fitzgerald represented that "in early August of 2005, plaintiff's counsel contacted the undersigned counsel and advised that there had been a recent Order issued by the U.S. District Court for the Eastern District of Pennsylvania, where the litigation is pending, imposing a limit on the number of depositions, and that this limit has already been exceeded."  (Doc. No. 9, at 1.)  As noted above, however, it is clear that the Eastern District's June 7 Order did not impose a blanket limitation on Highmark's ability to take in excess of ten depositions, and that the Order instead was applicable only to Plaintiffs. Furthermore, Attorney Fitzgerald indicates that "Plaintiffs' counsel . . . requested that Mr. Olmstead refrain from producing any documents or appearing for a deposition until further clarification is obtained from this Court and from the Eastern District."  (<u>Id.</u>, at 2.)  The Court finds Plaintiffs' counsel's insinuation that the July 28 Order or its enforcement required "further clarification" to be spurious.  As further justification for not immediately complying with the July 28 Order, counsel for the PMS and Mr. Olmstead noted that the Order "does not set forth

any specific date or time frame by which Mr. Olmstead must produce the documents or appear for a deposition."  (Id., at 1.)  The Court finds all of these asserted bases for not complying with the terms of the July 28 Order to be unjustified and without merit.  To the extent Plaintiffs' counsel misrepresented the terms of the Eastern District's June 7 Order in order to encourage Olmstead to refrain from compliance with the July 28 Order, such misrepresentation was obviously improper.

The Court finds Plaintiffs' failure to participate or assert their interests timely in this discovery dispute, which is now nearly one-year old, to be without excuse.  The Court also finds no legitimate basis to prolong this discovery dispute any further by way of an in camera review of documents that were at all times central to the litigation between Highmark and Olmstead. Accordingly, Plaintiffs' request for an in camera review of documents responsive to the subpoena will be denied.

## III.   Conclusion

For reasons that are unclear, Plaintiffs elected not to object or otherwise participate in this Court's adjudication of Highmark's motion to enforce the subpoena and notice of deposition served upon Dennis Olmstead.  Notwithstanding the efforts of the PMS and Olmstead's counsel, Olmstead was largely unsuccessful in contesting Highmark's subpoena.  Upon careful review of the parties' arguments, this Court issued an Order directing Olmstead to respond to discovery requests 1, 2, and 3 of the subpoena duces tecum, and further directed the Olmstead to cooperate with Highmark in scheduling his deposition.  In response to this Order, Plaintiffs proceeded to the Eastern District where they requested that an Order issued by that Court on June 7 be modified in such a way as to cast doubt on Highmark's ability to enforce its subpoena duces

13

tecum and take Olmstead's deposition without leave of <u>that</u> court.

Plaintiffs' untimely and unsuccessful efforts to obtain this extraordinary relief represented the sole basis for their request that this Court stay the July 28 Order.  This Court clearly had jurisdiction to adjudicate the discovery dispute between Highmark and Olmstead and to enforce a subpoena issuing from this District.  For the reasons discussed more fully above, all of the arguments Plaintiffs advanced in favor of a stay or further review of the subpoenaed documents are untimely, and none are persuasive.  Accordingly, the Court declines to stay enforcement of the July 28 Order and finds no basis for further prolonging this already substantially protracted discovery dispute.  An appropriate order follows.

IV.     **Order**

And now, this 23rd day of November 2005, for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** Plaintiff's request that this Court stay its July 28, 2005 Order (Doc. No. 8) is **DENIED**.

**IT IS FURTHER ORDERED THAT** Plaintiffs' request that this Court conduct an in camera review of certain documents responsive to the subpoena claimed to be work-product of Plaintiffs' counsel is **DENIED**.

The PMS shall produce forthwith all non-privileged documents responsive to document requests 1, 2, and 3 of the subpoena duces tecum, and Highmark and Olmstead shall cooperate in scheduling his deposition for a time convenient to the parties.  This Order's omission of a specific date upon which Olmstead's deposition shall be taken should not be interpreted by the PMS, Olmstead, or the parties as mitigating in any way the obligation to schedule the deposition promptly.   The Clerk of Court is directed to close the file.

　　　　　　　　　　　S/ Yvette Kane
Yvette Kane
United States District Judge